# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**NANCY A. FRITSCH,**

    Plaintiff,

vs.                                      No. CIV 01-713 LCS/KBM

**FIRST SAVINGS BANK,
PERFORMANCE BANKERS, INC.,
and BRIAN YARRINGTON,**

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Performance Bankers, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction and to Dismiss Count III for Failure to State a Claim filed August 20, 2001 (*Doc. 21*); Defendant Brian Yarrington's Motion to Dismiss Count II of Plaintiff's Complaint for Failure to State a Claim filed August 23, 2001 (*Doc. 24*); and Defendant Brian Yarrington's Motion to Dismiss Count V of Plaintiff's Complaint for Failure to State a Claim filed August 23, 2001 (*Doc. 26*). The United States Magistrate Judge, acting upon consent and designation pursuant 28 U.S.C. § 636(c), and having considered the pleadings, briefs, relevant law, and being otherwise fully advised, finds that these Motions are not well-taken and should be **DENIED**.

### I. Background

Defendant, First Savings Bank ("FSB") is a federal savings and loan institution with a branch located in Las Cruces, New Mexico. (Compl. ¶ 2). Defendant, Performance Bankers, Inc. ("PBI") is alleged to have operated and managed FSB. (Compl. ¶ 3). PBI is incorporated under the laws of South Dakota, with its principal place of business also located in South Dakota. (Notice of Removal

¶ 4). Defendant, Brian Yarrington was formerly a resident of El Paso, Texas, at the time of his employment at FSB, but is now currently a resident of state of Wyoming. (Compl. ¶ 4). Brian Yarrington was hired as the regional president for FSB by PBI. (Compl. ¶ 13).

In March of 1998, the Plaintiff was hired to work at the FSB Las Cruces branch office. (Compl. ¶ 9). The Plaintiff alleges that PBI oversaw the hiring and selection of various employees for the Las Cruces branch as well as supported, participated, and ratified Mr. Yarrington's "personal agenda" to develop a work force of younger females. (Compl. ¶ 14).

On April 26, 2001, Plaintiff filed suit in the Third Judicial District of the State of New Mexico. On June 22, 2001, Defendants removed the matter to federal court. The Plaintiff's Complaint alleges claims for discrimination in violation of the ADEA, Title VII, and the New Mexico Human Rights Act (Count I), civil conspiracy (Count II), negligent retention and supervision (Count III), breach of contract (Count IV), intentional interference with contract (Count V), and appeal from decision of Human Right's Commission (Count VI).

On August 20, 2001, Defendant PBI filed its Motion to Dismiss, arguing that "New Mexico" does not have personal jurisdiction over it, and that the Plaintiff's complaint for negligent retention and supervision by Defendant PBI fails to state a claim upon which relief can be granted. On August 23, 2001, Defendant Brian Yarrington filed his Motions to Dismiss, arguing that the Plaintiff's conspiracy and intentional interference with contract claims fail to state a claim upon which relief can be granted.

**II. Standards for Dismissal Under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6)**

The plaintiff bears the burden of establishing personal jurisdiction over the defendant with respect to a FED. R. CIV. P. 12(b)(2) motion to dismiss. Prior to trial, however, when a motion to

dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing. The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. *See Ten Mile Indus. Park v. Western Plains Serv. Corp.*, 810 F. 2d 1518, 1524 (10th Cir. 1987). If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party. *See Behagan v. Amateur Basketball Ass'n*, 744 F. 2d 731, 733 (10th Cir. 1984) (internal cites omitted). Submission of affidavits in connection with a motion to dismiss for lack of personal jurisdiction does not convert the motion into one for summary judgment. *See Attwell v. LaSalle National Bank*, 607 F. 2d 1157, 1161 (5th Cir. 1979) cert. denied, 445 U. S. 954 (1980).

A case should not be dismissed under FED. R. CIV. P. 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In ruling on a motion to dismiss, the court must accept all the well-pleaded factual allegations of the complaint as true and view them in the light most favorable to the non-moving party. *See Sutton v. Utah State Sch. for the Deaf and Blind*, 173 F. 3d 1226, 1236 (10th Cir.1999). In accepting the complaint's allegations as true, the court must consider whether the complaint, standing alone, is legally sufficient to state a claim upon which relief may be granted. *See Ordinance 59 Ass'n v. United States Dep't of Interior Secretary*, 163 F. 3d 1150, 1152 (10th Cir. 1998).

### III. Analysis

### A. Personal Jurisdiction

Defendant PBI filed a motion under FED. R. CIV. P. 12(b)(2) challenging personal

jurisdiction. Plaintiff maintains the Defendant is subject to jurisdiction under the New Mexico long-arm statute, NMSA 1978 § 38-1-16(A), because it transacted business and it committed a tortuous act within this state. Defendant PBI responds that it has neither transacted any business nor committed tortious acts within the state and therefore lack the requisite minimum contacts to satisfy fair play and substantial justice.

Faced with Defendant's 12(b)(2) motion to dismiss for lack of personal jurisdiction, Plaintiff bears the burden of showing facts that support this Court's exercise of personal jurisdiction. *See Overton v. United States*, 925 F. 2d 1282, 1283 (10th Cir. 1991). A prima facie showing of personal jurisdiction over a nonresident defendant in a diversity and/or federal question[1] case is a two step process in which a plaintiff must show that (1) jurisdiction is legitimate under the laws of the forum state and that (2) the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment. *See Soma Medical Int'l v. Standard Chartered Bank*, 196 F. 3d 1292, 1295 (10th Cir. 1999) (*quoting Far West Capital, Inc. v. Towne*, 46 F. 3d 1071, 1074 (10th Cir. 1995)).

First, with respect to the laws of the forum state, New Mexico, I find that the Court has jurisdiction over Defendant PBI. *See Fort Knox Music, Inc. v. Baptiste*, 203 F. 3d 193, 196 (2nd Cir. 2000) (holding that federal court applies the forum state's personal jurisdiction rules in copyright cases). New Mexico courts apply a three-step test to determine whether they have personal jurisdiction over a nonresident defendant: 1) the act at issue must be enumerated in the long-arm

---

[1] When federal statutes governing claims in a federal question case do not specifically provide for national service of process, federal courts have personal jurisdiction to the extent permitted by the law of the state in which they sit. *See Sunwest Silver, Inc. v. Intern. Connection, Inc.*, 4 F. Supp. 2d 1284, 1286 (D. N. M. 1998). In this case, jurisdiction in federal court is based on both federal questions and/or diversity jurisdiction. The federal statutes employed in the Plaintiff's complaint are Title VII, 42 U.S.C. §2000 et seq. and the ADEA, 29 U.S.C. §621 et seq., neither of which specifically provide for national service of process.

4

statute;[2] 2) the plaintiff s cause of action must arise from the act itself; and 3) the act(s) of the defendant must establish the minimum contacts necessary to satisfy due process. *See Benally v. Amon Carter Museum of Western Art*, 858 F. 2d 618 (10th Cir. 1988); *see also Selas v. Homestake Enters., Inc.*, 742 P. 2d 1049, 1050 (N. M. 1987).

First, the Plaintiff has alleged that Defendant PBI has both transacted business and has committed a toritious act within the state of New Mexico, thus fulfilling the first element. (Compl. ¶ 2) Second, the Plaintiff has alleged that Defendant not only hired Defendant Yarrington, but also approved, supported, participated, and ratified his unfit behavior with respect to her wrongful discharge. (Compl. ¶¶ 13 and 14). Therefore, I find that the Plaintiff has adequately alleged sufficient facts in support of the first two elements.

In order to determine if an out-of-state defendant conducts business sufficient enough within the state of New Mexico to satisfy the statute, the following questions are asked: who initiated the transaction, where the transaction was entered into, and where the performance occurred. *See Caba*, 127 N. M. at 560 (*citing Pelton v. Methodist Hosp.*, 989 F. Supp. 1392 (D. N. M. 1997)).

In addition to these questions, the federal court is guided by the New Mexico Supreme Court's construction of the state's long-arm statute. The New Mexico Supreme Court has construed the statute as extending the exercise of personal jurisdiction as far as is constitutionally permissible. *See Federal Deposit Insurance Corporation v. Hiatt*, 872 P. 2d 879, 881 (N. M. 1994). Because of

---

[2] The applicable provisions of the New Mexico long-arm statute are:
A. Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts enumerated in this subsection thereby submits himself or his personal representative to the jurisdiction of the courts of this state as to any cause of action arising from:
(1) the transaction of any business within this state; . . . .
(3) the commission of a tortious act within this state; . . . .
C. Only causes of action arising from acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction is based upon this section. N. M. Stat. Ann. § 38-1-16 (1978).

this contiguity between the long-arm statute and constitutional requirements, a personal jurisdiction analysis in New Mexico collapses into a single search for the outer limits of what due process permits. *Id.* (*quoting Forsythe v. Overmyer*, 576 F. 2d 779, 782 (9th Cir. 1978)).

The issue before the Court, then, is whether PBI has sufficient contacts with New Mexico such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. *See International Shoe Co. v. Washington*, 326 U. S. 310, 316 (1945). The two principal inquiries with respect to the minimum-contacts issue are whether the defendant has purposefully availed itself of the privilege of conducting activities within the forum state and whether the assertion of jurisdiction would comport with fair play and substantial justice. *See Burger King Corp. v. Rudzewicz*, 471 U. S. 462, 476 (1985). The Court must decide whether Defendant's contacts with the state of New Mexico were such that it should reasonably have anticipated being haled into court here. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U. S. 286, 297 (1979).

The facts as the Plaintiff avers them lead the Court to conclude that it has jurisdiction over Defendant PBI. In this case, the complaint alleges that PBI operated and managed the FSA branch in Las Cruces, oversaw and participated in the hiring of various FSA employees, and approved, supported, and ratified the regional president's "agenda" to hire younger females.

In addition, the Plaintiff alleges that her group life and disability insurance was provided by PBI during her employment at FSB in Mew Mexico. (Fritsch Aff. ¶ 2). Another affidavit submitted by the Plaintiff also states that PBI's president, Gene Hawk, was on the Board of Directors of FSB. (Hitson Aff. ¶ 3).[3] Mr. Hawk also conducted annual FSB meetings held in South Dakota and

---

[3] Shirley Hitson was employed by FSB as a branch president from October 2, 1996 until she was terminated on January 20, 2000. (Hitson Aff. 1).

6

conducted sessions in which New Mexico branch budgets, operations, and pending problems were addressed. (Hitson Aff. ¶ 7). Mr. Hawk visited the New Mexico FSB branch on behalf of PBI in order to conduct interviews of prospective employees, to conduct meetings, and to attend quarterly "sales meetings." (Hitson Aff. ¶¶ 8 and 15). He specifically conducted the interview of and made the decision to hire the Las Cruces FSB president, Mr. Yarrington. (Hitson Aff. ¶ 9). Ms. Hitson's affidavit also states that PBI had the absolute ability to hire, fire and control Mr. Yarrington and to prevent him from acting inappropriately with FSB employees. (Hitson Aff. ¶ 11). The Plaintiff also submitted evidence suggesting that PBI was her New Mexico employer because in her "exit" paperwork, it listed PBI as the "company" and Plaintiff as the "employee." (Ex. I to Fristsch Aff.). From the material submitted, it appears that PBI was doing business in New Mexico, s*ee* NMSA 1978 § 38-1-16(A) and *International Shoe Co.*, 326 U. S. at 316, and is therefore subject to its general jurisdiction.

### B. Negligent Retention and Supervision by Defendants - Failure to State a Claim for which Relief can Be Granted

Defendant PBI argues that Count III, negligent retention and supervision, fails to state a claim upon which relief can be granted. For an employer to be liable for negligent hiring and retention, there must be evidence that the employee was unfit, considering the nature of the employment and the risk he posed to those with whom he would foreseeably associate, *see* Restatement (Second) of Agency § 213 comment d (1958), and that the employer knew or should have known that the employee was unfit. *See F & T Co. v. Woods*, 92 N.M. 697, 594 P.2d 745 (1979). The liability flows from a direct duty running from the employer to those members of the public whom the employer might reasonably anticipate would be placed in a position of risk of injury as a result of the hiring. *See Ponticas v.*

*K.M.S. Investments*, 331 N.W.2d 907 (Minn.1983).

In particular, the Defendant argues that PBI has no duty to either take action or refrain from taking action with regards to the employment of Defendant Yarrington because Yarrington has never been an employee of PBI. The Plaintiff alleges in Count III of her complaint that prior to her wrongful discharge, Defendant BPI was directly responsible for hiring Defendant Yarrington as regional president for the Las Cruces branch. (Compl. ¶ 13). In addition, Defendant PBI negligently supervised Mr. Yarrington and "negligently retained him in his position notwithstanding their knowledge of his acts, omissions, and propensities." (Compl. ¶ 34). The complaint also states that Defendant PBI "[was] or should have been aware of Brian Yarrington's wrongful conduct and dangerous propensities." (Compl. ¶ 32). The Plaintiff alleges that Defendant Yarrington "succeeded in firing, demoting, disciplining, or forcing to quit virtually every female supervisor or manager in the Southwest Region who was over the age of fifty." (Compl. ¶ 17).

I note that the Plaintiff is not required to allege "discrete facts" under the notice pleading standards of rule 8(a) of the Federal Rules of Civil Procedure. At this point, Plaintiff does not have to come forward with evidence showing a casual link between PBI and Mr. Yarrington's behavior. Plaintiff has provided short and plain statements of her claim sufficient for Defendant to prepare a responsive pleading. *See Mountain View Pharmacy v. Abbott Labs.*, 630 F.2d 1383, 1388 (10th Cir.1980) ("factual pleading is required only insofar as it is necessary to place a defendant on notice as to the type of claim alleged and the grounds upon which it rests, thereby enabling a defendant to prepare a responsive pleading"). Plaintiff adequately described the relationship between PBI and Mr. Yarrington and how it was possible for PBI to intervene thus establishing PBI's alleged duty towards the employees of the Las Cruces branch. In addition, the Plaintiff properly alleged sufficient facts

pertaining to Yarrington's, the employee, unfit behavior and PBI's apparent knowledge. Accordingly, the purposes of the notice pleading requirements of rule 8(a) have been met. *See Evans v. McDonald's Corp.*, 936 F.2d 1087, 1091 (10th Cir.1991); *see also Kohn v. American Housing Foundation I, Inc.*, 170 F.R.D. 474, 476 (D.Colo.1996).

Accepting as true the well-pleaded factual allegations of Plaintiff's complaint and drawing all reasonable inferences in Plaintiff's favor, I find that Plaintiff has sufficiently stated a claim for negligent supervision and retention. Dismissal of Plaintiff's claim is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). Plaintiff alleges that Defendant had the ability to control or direct Mr. Yarrington and thus was liable for negligent supervision and retention. (Compl. ¶ 3).

### C. Civil Conspiracy - Failure to State a Claim for which Relief can Be Granted

Defendant Yarrington argues within his own Motion to Dismiss that Count II, civil conspiracy by Defendants, fails to state a claim upon which relief can be granted. In particular, Defendant Yarrington argues that he never had any contact with Defendant PBI nor Mr. Hawk, president of PBI, concerning Plaintiff's employment. (Yarrington Aff. ¶¶ 4 and 5). The Plaintiff alleges, with supporting affidavits, that Mr. Hawk visited the FSB branch in Las Cruces, interviewed prospective employees and was reported saying that "he does not like women managers." (Hitson Aff. ¶¶ 8 and 13). She also alleges that Mr. Hawk personally hired Mr. Yarrington for the Las Cruces branch. (Hitson Aff. ¶ 9).

Under New Mexico law, to constitute an actionable civil conspiracy, there must be a

combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. *See Las Luminarias of the N. M. Council of the Blind v. Isengard*, 92 N. M. 297, 300 (Ct. App. 1978) (citations omitted). Civil conspiracy is not of itself actionable; the gist of the action is the damage arising from the acts done pursuant to the conspiracy. *See Id.* Generally, to state a cause of action for conspiracy, the complaint must allege: (1) the existence of the conspiracy; (2) the wrongful act or acts done pursuant to the conspiracy; (3) the damage resulting from such act or acts. *See Silva v. Town of Springer, et al.,* 121 N. M. 428, 434 (Ct. App. 1996). The existence of the conspiracy must be pled either by direct allegations or by allegations of circumstances from which a conclusion of the existence of a conspiracy may be reasonably inferred. *See Id.*

The Tenth Circuit has recognized that even though more than mere conclusory allegations are required to state a valid claim, the nature of conspiracies often makes it impossible to provide details at the pleading stage, and that the Court should allow access to the discovery process rather than dismiss the complaint. *See Brever v. Rockwell Intl Corp.*, 40 F. 3d 1119, 1126 (10th Cir. 1994). *See also Candelaria v. City of Albuquerque*, 768 F. 2d 1207, 1209-1210 (10th Cir. 1985) (single allegation that defendants acted in concert sufficient to state claim for civil conspiracy under 42 U. S. C. § 1985).

Plaintiff alleges that Mr. Yarrington " together with Performance Bankers, Inc. and various unnamed co-conspirators who were working with entities affiliated with First Savings Bank and Performance Bankers, Inc. engaged in civil conspiracy to deprive Plaintiff to the rights to which she was entitled as a female over the age of forty (40) and to interfere with her employment at First Savings Bank." (Compl. ¶ 28). In addition, the Plaintiff alleged that "[t]heir actions adversely affected the terms and conditions of her employment and resulted in her wrongful and illegal termination."

10

(Compl. ¶ 28). Although I am concerned about the lack of specificity as to which Defendants were allegedly involved in a conspiracy, I conclude that Plaintiff's allegations of conspiracy are sufficient to withstand dismissal at this time and the Defendant's Motion to Dismiss is premature.[4] Discovery will provide both sides with the necessary information to develop the factual basis of this claim, if any.

### D. Intentional Interference -
### Failure to State a Claim for which Relief can Be Granted

Defendant Yarrington argues within his Motion to Dismiss that Count V, Intentional Interference with Contract by Defendant Yarrington, fails to state a claim upon which relief can be granted. The Defendant lists the elements of tortious interference with a contract as the following: "(1) defendant had knowledge of the contract between the corporation and plaintiff; (2) performance of contract was refused; (3) defendant played an active and substantial part in causing plaintiff to lose the benefits of her contract; (4); damages flowed from the breach of contract; and (5) defendant induced the breach without justification or privilege to do so." (Def. Brief at 2) (citing *Ettenson v. Burke and Mariah Media, Inc.*, 2001 - NMCA- 003 (NM App. 2000)). The Defendant argues that because he acted within the scope and course of his employment with FSB and that his "personal agenda" and "defamation" of the Plaintiff was authorized and approved, then his interference was privileged.[5]

The complaint alleges the following facts: that Defendant Yarrington was hired as President of the FSB Las Cruces branch (Compl. ¶ 13); Defendant had a "personal agenda" that included

---

[4] Unlike claims of fraud, which need to be pled with particularity as per Fed. R. Civ. Pro. 9(b), a civil conspiracy claim need only be pled with simple, concise, and direct terms as per Fed. R. Civ. Pro. 8(e).

[5] Defendant Yarrington does not challenge any of the other elements within his memorandum brief in support of his motion to dismiss. Therefore, the Court concludes that Mr. Yarrington concedes the other four elements are properly pled.

"developing a work force of younger females that had a certain young, sexual 'look'" (Compl. ¶ 14); Defendant "denigrated Plaintiff's abilities and performance and verbally defamed her to other employees and customers by falsely accusing her of unprofessional conduct and not doing her job."(Compl. ¶ 16); Plaintiff was terminated from her job (Compl. ¶ 20); and that PBI was or should have been aware of Defendant Yarrington's actions, "and they approved, authorized, ratified, or participated in his misconduct" (Compl. ¶ 21).

For the purposes of this analysis, all factual allegations of the complaint are accepted as true and viewed in the light most favorable to Plaintiff. *See Sutton*, 173 F. 3d at 1236. In her complaint, the Plaintiff alleges that Defendant Yarrington utilized defamation and false accusations in order to further his own improper motives and to have her fired. Accepting these allegations as true, the conduct of Defendant Yarrington, although improper, may not rise to the level necessary to permit recovery under the heightened threshold of the tort of intentional interference with a contract. However, resolution of such issues usually occurs at the summary judgment stage or later. *See Tuton v. City of Las Cruces*, CIV 98-1497 JC/ JHG (May 22, 2000). Accordingly, dismissal of Plaintiff's claim for intentional interference would be premature and inappropriate.

**WHEREFORE,**

**IT IS ORDERED** that Defendant Performance Bankers, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction and to Dismiss Count III for Failure to State a Claim filed August 20, 2001 (*Doc. 21*), is hereby **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Brian Yarrington's Motion to Dismiss Count II of Plaintiff's Complaint for Failure to State a Claim filed August 23, 2001 (*Doc. 24*), is hereby **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Brian Yarrington's Motion to Dismiss Count V of Plaintiff's Complaint for Failure to State a Claim filed August 23, 2001 (*Doc. 26*), is hereby **DENIED**.

**IT IS SO ORDERED**.

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**